**NATIONAL BOARD OF YOUNG MEN'S CHRISTIAN ASSOCIATIONS, a/k/a YMCA of the U.S.A., Plaintiff-Appellant,**

v.

**The FLINT YOUNG MEN'S CHRISTIAN ASSOCIATION OF FLINT, MICHIGAN, Defendant-Appellee.**

No. 84–1262.

United States Court of Appeals, Sixth Circuit.

Argued March 13, 1985.

April 19, 1985.

Rehearing and Rehearing En Banc Denied June 24, 1985.

Cornelia G. Kennedy, Circuit Judge, dissented with opinion.

W. Gerald Warren, Robert W. Powell, Dickinson, Wright, Moon, Van Dusen and Freeman, Detroit, Mich., George P. Hoare, Jr., Thomas M. Gibson (argued), Hedman, Gibson, Costigan, & Hoare, New York City, for plaintiff-appellant.

Marshall G. MacFarlane (argued), Keil, Henneke, Ruhala, McKone and MacFarlane, Flint, Mich., for defendant-appellee.

Before MERRITT and KENNEDY, Circuit Judges and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this tradename infringement action not yet tried, District Judge Newblatt declined to issue, prior to trial, a preliminary injunction ordering the defendant, the Flint Young Men's Christian Association, a local YMCA, to refrain from using YMCA trademarks and tradenames registered by plaintiff, National Board of Young Men's Christian Associations, under the Lanham Act, 15 U.S.C. §§ 1051–1127. Defendant has withdrawn from the national organization in a dispute over dues payments.

The general standard of appellate review in preliminary injunction cases is "abuse of discretion" by the trial court. In order to reverse the trial court we must find that it has made a serious and important error respecting the requirements of likelihood of success on the merits or irreparable injury or one of the other requirements for the issuance of a preliminary injunction. Our review of the record convinces us that Judge Newblatt has not abused his discretion in declining to issue an injunction against the Flint Young Men's Christian Association prior to trial.

■ In light of the initial showing by defendant that plaintiff has acquiesced in the use of YMCA trademarks and tradenames by numerous local YMCA organizations while unaffiliated with or suspended from the national organization, and in light of proof that plaintiff and defendant do not compete in products, services or membership, we are unable to conclude that Judge Newblatt abused his discretion in finding that the plaintiff has not shown sufficient product confusion or harm to reputation through confusion to meet the threshold showing of irreparable injury.

■ The plaintiff, relying on *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2nd Cir.1971), argues for a *per se rule* which deems the requirement of irreparable injury satisfied and the injunction prior to trial mandatory whenever the plaintiff shows ownership of a registered trademark or tradename used by the defendant. Our dissenting colleague would adopt such a *per se* rule. Reliance on *Omega* is misplaced, however. In *Omega*, Judge Friendly reaffirmed a standard first enunciated by Judge Frank in *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir.1953), that,

> a temporary injunction should issue when, in his words, a plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation" *and "the balance of hardships tips decidedly toward plaintiff,"* even though the plaintiff has not demonstrated · a strong likelihood of success. (Emphasis added.)

451 F.2d at 1193–94. Judge Friendly defined this balancing test for measuring irreparable injury in trademark cases to mean that a preliminary injunction should not issue unless "there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." *Id.* at 1195. We are unable to say that Judge Newblatt abused his discretion in balancing the hardships in the case and in refusing to issue an injunction prior to trial taking away the name which the Flint YMCA has used, according to this record, for more than 100 years. *Omega* is not authority for a *per se* rule on trademark confusion. If it were, there would be no need for a "balance of hardship" test for determining irreparable injury.

Despite our dissenting colleague's desire to put words in our mouth, we need not, and do not, reach any conclusion on the likelihood-of-success-on-the-merits branch of the preliminary injunction test, namely, whether the plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." Nor do we reach any conclusion on the issue of abandonment. The defendant claims and has offered proof that it has used the name, "Young Men's Christian Association," and the acronym, "YMCA," for more than 100 years—for many years prior to the registration of this name by plaintiff. It also argues that it did not lose its independence or control over the use of its name as a local YMCA by its affiliation with the national organization. We need not reach these issues. The record is not yet developed, and the discovery process is still ongoing in the District Court. There is no point in tying the hands of the District Court on these issues prior to trial. These are essentially factual issues, as is the "balancing of hardship" test of irreparable injury. We do not know how these issues should be resolved, and nothing will be gained by ruling on them prior to trial on the merits.

Accordingly, the judgment of the District Court is affirmed. Costs are taxed against plaintiff-appellant. We would encourage the District Court to set the case for trial at an early date.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

The District Court denied plaintiff a preliminary injunction on the grounds that plaintiff had failed to establish that it would be irreparably harmed by the denial

and had failed to show a substantial likelihood of prevailing on the merits. As the majority points out, our review of the denial of preliminary injunctive relief is limited to determining whether the District Court abused its discretion. This standard is, of course, very deferential, but it does not completely divest us of our responsibility to examine the record to see that the District Court's action comports with the law. Because the record reveals that the decision was rooted in errors of law, I would hold that the District Judge did abuse his discretion and that the preliminary injunction should issue.

The District Court's conclusion that plaintiff did not make a showing of irreparable harm overlooks the harm inherent in the loss of control over the use of one's registered trademark. Irreparable harm exists, as a matter of law, when one party appropriates the precise mark which is registered to another. *See Burberry's (Wholesale) Ltd. v. After Six Corp.*, 122 Misc.2d 561, 471 N.Y.S.2d 235 (1984). The court in *Burberry's* based its finding of irreparable harm on the principle that the registered owner of the mark is "entitled to have its reputation within its control." *Id.*, 471 N.Y.S.2d at 237. As another court has put it:

> Defendants ... will continue to be identified in the mind of the public with the plaintiff organization; and this will be unfair to plaintiff, not only because it will enable defendants to infringe upon the rights of plaintiff with respect to the use of a name to which plaintiff's organization has given value, but also because it will subject plaintiff in the public mind to responsibility for the action of a group over which it has no further control.

*Grand Lodge Improved, Benevolent, Protective Order of Elks of the World v. Eureka Lodge No. 5 Independent Elks*, 114 F.2d 46, 48 (4th Cir.1940). Still another court has recognized that the infringer "borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sale by its use...." *Yale Electric Corporation v. Robertson, Commissioner of Patents*, 26 F.2d 972, 974 (2d Cir.1928). *See also Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587, 597 (D.P.R. 1982).

The mistake which the majority makes is to view the question of confusion as debatable and, therefore, within the discretion of the trial judge at this preliminary stage. Relying on *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2d Cir.1971), the majority quite correctly concludes that a high probability of confusion must be found in order to establish irreparable harm in a trademark case. What the majority neglects to note is that where the infringement involves use of a symbol identical, rather than merely similar, to the mark, the requisite confusion is presumed. In fact, *Omega* involved identical, not merely similar, symbols, and Judge Friendly, writing for the court, found this sufficient to establish confusion: "Were the trademarks of the East and West German cameras merely similar, this might mitigate the possibility of confusion.... However, in this case, except for reference to the place of manufacture, the names are identical." *Id.* at 1195. Thus, cases involving use of the identical symbol are different from ordinary trademark cases which "are predicated on the complaint that the defendant employed a trademark so *similar* to that of the plaintiff that the public will mistake the defendant's products for those of the plaintiff." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491–92 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984) (emphasis added).

The presumption of confusion where the symbol is *identical* to the registered mark has been recognized elsewhere. *See, e.g., Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979) ("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement"); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 957 (S.D.N.Y.

1980) ("It is not necessary for the plaintiff to demonstrate actual confusion and the defendant's product need not be in direct competition with the products rightfully sold under the plaintiff's mark"). The instant case involves identical symbols. Confusion is therefore presumed, and irreparable harm established by the resulting loss in plaintiff's control over its reputation. The District Court erred in confining its analysis of irreparable harm to the loss of dues payments.

The District Court also found that plaintiff had not made a sufficient showing of a likelihood of success on the merits. This, too, was based on an error of law. The District Court believed defendant had presented substantial evidence to support its defense that plaintiff had abandoned the mark. The record, however, reveals absolutely no evidence which would legally amount to abandonment of the mark which is used by 1,850 affiliated YMCA's, as well as the national organization.

Defendant presented evidence that approximately forty other YMCA's, including three within a fifty mile radius of defendant, had been suspended by plaintiff yet were permitted to continue using the mark. But unlike defendant, which took the initiative in disaffiliating itself from plaintiff, these other YMCA's were suspended on plaintiff's initiative. A suspension entails the withholding by the plaintiff, for an indefinite period of time, of certain services normally rendered to the affiliate. It is plaintiff's policy to allow the suspended YMCA's to continue using the mark and to seek to remedy the reason for suspension. Plaintiff nonetheless retains control over the mark, since plaintiff is always free to end the suspension or to permanently terminate the affiliation and prevent that ex-affiliate from using the mark.

Use of the mark by the suspended YMCA's therefore does not constitute abandonment by plaintiff. In *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139–40 (3d Cir.1981), the court lucidly articulated the law on this point:

Non-use means much more than failure to prosecute promptly trademark infringements, and even total, but temporary non-use of a name has, at times, been found insufficient to support a finding of abandonment. *Beech-Nut Packing Co. v. P. Lorillard Co.*, 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810 (1927). That the United States Jaycees has tolerated some of its disaffiliated or disobedient chapters in the use of its marks does not constitute non-use. Consistent and proper use of those marks elsewhere in the United States, see 490 F.Supp. at 690, defeats any claim of non-use. *Dawn Donut Co. [v. Hart's Ford Stores, Inc.], supra*, 267 F.2d [358] at 363 (2nd Cir. 1959) (abandonment occurs only when registrant fails to use its mark anywhere in the nation); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 878–79 (E.D.N.Y.1978) (no abandonment of mark used elsewhere in the United States)....

The second requirement for a showing of abandonment under section (a) of the statutory definition is intent to abandon. We find no evidence of such intent, nor are there any facts that could support such a finding. On the contrary, this and other legal efforts of the United States Jaycees definitely indicate an intent to retain exclusive use of its marks.
. . . .
... We conclude that, although the United States Jaycees did display a degree of tolerance toward some of its disobedient chapters in the use of its marks, such conduct did not constitute non-use and did not demonstrate an intent to abandon, nor did it cause its marks to lose their significance. The National therefore has not abandoned its marks. *See also Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida*, 200 U.S.P.Q. 282, 294 (S.D. Fla.1978). Applying these standards, the evidence on the record in the instant case is inadequate, as a matter of law, to establish abandonment.

On the issue of likelihood of success, defendant and the majority also refer to a

claim of prior use by the defendant. The District Court declined to pass on the issue and did not base its denial of preliminary relief on a finding that defendant would be likely to succeed on this issue. Nonetheless, the panel apparently holds—without citing authority and without discussing the question of the merger of the local's rights into the rights of the national organization—that plaintiff is likely to lose on this issue. I disagree. Numerous cases have held that any separate existence and right to a name that an organization may have had before affiliating with a national organization is merged with that of the national organization on acceptance of the charter. *See Grand Lodge, supra; Council of Better Business Bureaus, supra,* at 296; *United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 71–72 (N.D.Cal.1972); *National Board of YWCA v. YWCA of Charleston, South Carolina,* 335 F.Supp. 615, 622 (D.S.C.1971). Here the national organization received its uncontestable rights[1] to the trademarks while defendant was affiliated.

Neither of defendant's defenses are legally meritorious. We have then a situation where a former affiliate of plaintiff is appropriating plaintiff's uncontestable trademarks against plaintiff's will. I believe that the likelihood that plaintiff will prevail on the merits is overwhelming. Because the District Court's conclusion to the contrary was based on an error of law regarding the abandonment defense, I would hold that the District Judge abused his discretion.

I would remand the case to the District Court with instructions to issue the preliminary injunction.

---

**1.** For a discussion of the right of the holder of a mark to rely upon uncontestability generally, *see Park 'N Fly, Inc. v. Dollar Park and Fly,* —— U.S. ——, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).