**WYNN OIL COMPANY and Classic Car Wash, Inc., Plaintiffs-Appellants,**

v.

**Michael F. THOMAS, Defendant-Appellant.**

No. 86–5824.

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 1, 1987.

Decided Feb. 24, 1988.

Robert O. Guillot, Hamrick, Hoffman, Guillot, Kazubowski, San Jose, Cal., John J. Mulrooney, Memphis, Tenn., Claude A.S. Hamrick, Rosenblum, Parrish & Bacigalupi, San Jose, Cal., David H. Jaffer, for plaintiffs-appellants.

Floyd R. Hodge, Knoxville, Tenn., for defendant-appellant.

Before LIVELY, Chief Judge; KENNEDY, Circuit Judge; PECK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Appellants Wynn Oil Company ("Wynn") and Classic Car Wash, Inc. ("CCWI") brought this action against appellee Michael Thomas alleging federal trade mark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); and trademark dilution and injury to business reputation under the Tennessee Code, § 47-25-512. After a bench trial, the court entered judgment for Thomas on the infringement, unfair competition and trademark dilution allegations. Both Wynn and CCWI now appeal the District Court's judgment, 669 F.Supp. 831 (1986), claiming that the trial court erred (1) by failing to consider a prior opinion of the United States Trademark Office Examiner that a likelihood of confusion exists between appellants' and Thomas' use of the marks CLASSIC and CLASSIC CAR WASH on their goods and services; (2) by finding no likelihood of confusion between these marks; and (3) by determining that Thomas' use of the marks does not dilute appellants' rights in the marks. Because we agree with appellants that there is a likelihood of confusion between the products and services sold by the parties, we REVERSE the decision of the court below, and REMAND to the District Court with directions to grant appropriate injunctive relief.

## FACTS

Appellant Wynn, with headquarters in California, sells car care products, including solid and liquid waxes, cleaning kits, fragrances, and vinyl and leather finishers. These products are sold under the trade name CLASSIC, which was registered as a federal trademark on September 9, 1975. Wynn sells these products nationally through mass merchandisers, warehouse outlets, chain stores and small retail stores. Joint Appendix at 112.

In addition to the CLASSIC mark, Wynn also owns the rights to the service mark CLASSIC CAR WASH, which it registered on January 22, 1983. Wynn allegedly granted a license to CCWI to exclusively use its CLASSIC CAR WASH mark. While this mark was not registered until 1983, CCWI had purchased the rights to the mark in 1979, from Wynn's predecessor in interest, Classic Chemical Company. *Id.* at 74-75, 80-81, 113.

Using the service mark CLASSIC CAR WASH, CCWI has attempted to develop a nationwide network of franchise car washes. At the time of trial, CCWI had expanded to approximately sixteen franchises in six different states. These franchise car washes were more elaborate than most of their competitors, allowing customers to get their shoes shined, drink free coffee or cider, and enjoy the elaborate theme decorations, while waiting for their cars to be washed. CCWI had not yet expanded into Tennessee, but had recently opened a franchise in Alabama, and used national publications, such as the Wall Street Journal to advertise for additional franchises.

The defendant-appellee Thomas, owns or operates six car washes in Tennessee under the name of CLASSIC CAR WASH or CLASSIC CAR WASH SYSTEMS. These car washes are much simpler operations where customers simply follow their cars down a corridor while waiting for them to be washed. Although Thomas testified to first considering use of the mark in December of 1979, he did not open the first of these businesses until May, 1980 in Cookeville, Tennessee. He did not open his second car wash, in Cleveland, Tennessee, until 1983, four months after the mark CLASSIC CAR WASH was registered by Wynn.

In January, 1984, Wynn and CCWI learned of Thomas' use of the marks CLASSIC and CLASSIC CAR WASH. They sent a cease and desist letter to Thomas, which Thomas did not respond to until August 1984. In the meantime, Thomas applied for a state of Tennessee service mark for CLASSIC CAR WASH

SYSTEMS, which was granted. Thomas also opened two new franchises in Knoxville, and Oak Ridge before responding to appellants' letter. Finally, Thomas applied for a federal service mark from the United States Patent and Trademark Office on November 21, 1984. On the statement submitted to the Trademark office, Thomas affirmed that "to the best of my knowledge and belief no other ... corporation or association has the right to use the mark in commerce." *Id.* at 334. In spite of this protestation, the Trademark Office rejected the application because Thomas' mark "so resembles the mark(s) cited below [including appellants' marks] as to be likely to cause confusion." *Id.* at 339.

■ The District Court held that because there was no substantial "likelihood of confusion" between appellants' marks and Thomas' mark, there could be no trademark infringement. This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law. When reviewing a lower court's decision in these cases, we apply a clearly erroneous standard to findings of fact supporting the likelihood of confusion factors, but review *de novo* the legal question whether, given the foundational facts as found by the lower court, those facts constitute a "likelihood of confusion." *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1264 (6th Cir.1985).

■ In another case involving Frisch's Restaurant, *Frisch's Restaurants v. Elby's Big Boy, Inc.,* 670 F.2d 642 (6th Cir.1982), we set out the factors that courts should examine to determine whether the alleged infringement of a trade or service mark causes a "likelihood of confusion" among consumers. These factors include the

1. strength of plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

*Id.* at 648.

These factors are simply a guide to help determine whether confusion would be likely to result from simultaneous use of the two contested marks. They imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful. As we said in *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983), "[t]he general concept underlying likelihood of confusion is that the public believe that 'the mark's owner sponsored or otherwise approved of the use of the trademark.'" [citations omitted].

In applying these general concepts to the sometimes confusing facts in this case, we must evaluate both whether Thomas infringed Wynn's mark CLASSIC as well as CCWI's mark CLASSIC CAR WASH. This is required because Thomas began using CLASSIC CAR WASH before CCWI registered its service mark. Unless Thomas infringed the CLASSIC trade mark, he would be entitled to use CLASSIC CAR WASH for car washes in existence before the service mark CLASSIC CAR WASH was registered even if the CLASSIC CAR WASH service mark is infringed.

### Wynn v. Thomas

■ Wynn claims that Thomas has infringed Wynn's trademark CLASSIC in two separate ways. First; Thomas sells bulk wax to other car washes under the name of CLASSIC CAR WASH. Second, Thomas operates car washes under the same name. In order to determine whether Thomas' use of the term CLASSIC CAR WASH infringes on Wynn's trademark CLASSIC, we examine the eight factors identified in *Elby's Big Boy,* 670 F.2d at 648.

### 1. Strength of Mark

■ Unless a registered mark is successfully challenged within five years of registration, § 14 of the Lanham Act, 15 U.S.C. § 1065 makes clear that the trademark be-

comes incontestable.[1] As the Supreme Court recently concluded in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), an infringement action may not be defended on the grounds that a mark is merely descriptive, if that mark has met the requirements of incontestability.

Here Wynn registered the mark CLASSIC with the Patent and Trademark Office on September 9, 1975—nearly ten years before the commencement of this litigation. Yet in spite of the mark's incontestability, the District Court reasoned that CLASSIC is merely a descriptive term, and therefore a weak mark deserving "little, if any protection." Joint Appendix at 26. Permitting Thomas to relitigate the original strength or weakness of the mark runs afoul of *Park 'N Fly's* requirement that courts give full effect to incontestable trademarks. Therefore, while the strength of plaintiffs' mark will still be at issue in cases involving contestible marks, once a mark has been registered for five years, the mark must be considered strong and worthy of full protection.

## 2. Relatedness of the Goods

Because Thomas both sells bulk car wax for use in car washes, and provides a complete car washing service using the name CLASSIC CAR WASH, we must examine how both the products and the services are related to Wynn's car care products. In our view it is clear that Wynn's car care products are closely related to the car wax sold by Thomas. Both products perform the same function—protecting the finish of cars. The only difference between the products is that one is adapted to be applied in bulk by machine. Keeping in mind

that we are trying to determine whether consumers will be confused as to the origin of the product, this difference is insignificant compared to the similarities which could easily lead a purchaser of the bulk wax to believe that it is buying a product affiliated with Wynn's CLASSIC car care products.[2]

While the District Court found that the *"products* sold by Wynn under the mark CLASSIC—waxes, finishes and the like—bear a moderate degree of similarity to the *services* provided by the defendant," Joint Appendix at 26–27, the lower court concluded that because Wynn only provided the products, and Thomas sold "full-service washing and waxing, the relatedness naturally diminishes." Joint Appendix at 27. While we agree that the relatedness diminishes between products and service, the two parties fundamentally are selling the same thing—a clean car. A consumer who was used to buying CLASSIC products to wash his or her car could easily assume that the makers of CLASSIC products had expanded into the car wash business.

## 3. Similarity of the Marks

■ In evaluating similarity, "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir, 1980). Instead, a court must determine, in the light of what occurs in the marketplace, whether the mark "will be confusing to the public when singly presented." *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir.1983). In this case, the District Court erred by examining the two marks "side-by-side", and giving significant weight to

---

1. 15 U.S.C. § 1065 (1982). The validity of incontestable trademarks can only be attacked if one of the following five conditions has been met: (1) the registered mark has become the common descriptive name of an article or substance; (2) the mark has been abandoned; (3) the registration was obtained fraudulently; (4) the mark consists of or comprises matter prohibited by § 1054 or by § 1052(a), (b), or (c); or (5) the mark is being used by the registrant to misrepresent its source. Because none of these five defenses have been raised in this case, we must assume that the mark CLASSIC is totally

valid. See J. McCarthy, *Trademarks and Unfair Competition,* § 20:15 (2d ed. 1984).

2. This similarity between the products would be even more likely to confuse if the car washes that purchase Thomas' bulk car wax also stocked car care products like Wynn's. Under such circumstances, there could be little doubt that the purchasers of Thomas' bulk wash products and Wynn's packaged wash products would likely be confused by Thomas' use of the term CLASSIC.

the conclusion that "[a] reproduction of the marks below illustrates the general difference." Joint Appendix at 28.

A proper analysis of similarity includes examining the pronounciation, appearance, and verbal translation of conflicting marks. J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 23:4 (2d ed. 1984). Here, both parties use the exact term CLASSIC, which obviously is pronounced, and verbally translated in exactly the same way. Also, the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a "general, vague, or even hazy, impression or recollection" of the other party's mark. *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976). Therefore, we disagree with the District Court and conclude that under proper analysis these two marks are substantially similar.

### 4. Evidence of Actual Confusion

■ The District Court found "no known or demonstrated instances of actual confusion by the individual consumer or the industrial market." Joint Appendix at 29. While we accept this finding of fact, we disagree with the significance that the District Court placed on the absence of this factor. Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion. Yet, it does not follow that lack of evidence of actual confusion should be a significant factor, as the District Court assumes. In a case where there was no evidence of actual confusion, the Court of Appeals for the Federal Circuit correctly reasoned that

"this fact does not preclude this Court from concluding that there is a 'likelihood of confusion', as actual confusion is merely one factor to be considered by the Court when it makes its determination."

Further, because evidence of actual confusion is difficult to produce and frequently discounted as unclear or insubstantial, "this factor is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular

circumstances indicate such evidence should have been available."

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 914 (Fed.Cir.1984) [citations omitted].

### 5. Marketing Channels Used

In examining this factor, the District Court found, as a matter of fact, that "[w]hile some of the trade publications in which Wynn advertises are undoubtedly circulated in the area of the defendant's marketplace, it appears that little other, if any, overlap of marketing effort occurs." Joint Appendix at 29–30. The District Court based this conclusion on the fact that Wynn's national marketing effort totally eclipsed Thomas' rather minimal attempt to advertise his product. While we agree that any overlap in marketing channels probably would not significantly add to the likelihood of consumer confusion in this case, it is important to note that Thomas did advertise in all of his local markets, and in the Yellow Pages in both Atlanta and Memphis. *Id.* at 29, n. 6. Therefore, some marketing channel overlap inevitably occurred.

### 6. Likely Degree of Purchase Care

After acknowledging that the degree of care used by a consumer in selecting a car care product is not readily determinable, the District Court concluded that the possibility of spending ten or fifteen dollars on a car wash would probably make the degree of purchaser care "generally higher than a casual or impulse purchase." *Id.* at 31. While we would have given more weight to the relatively low cost of car wash products had we heard this case *de novo*, we cannot say that the District Court's conclusion was clearly erroneous, and we thus accept its finding. Yet, because of the admitted uncertainty of the degree of purchaser care in this case, we do not attach great significance to this factor.

### 7. Defendant's Intent in Selecting the Mark

The defendant's intent when adopting the mark CLASSIC CAR WASH could have been an important factor, because if the

mark was chosen with the intent of deriving benefit from the reputation of CLASSIC, that fact alone "may be sufficient to justify the inference that there is confusing similarity." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) (quoting Restatement of Torts § 729 comment f (1938)). But the District Court found that "Wynn has failed to show that Thomas's decision to include 'Classic' in naming his car washes was to confuse, mislead or deceive the public." Joint Appendix at 31. Since the defendant was not intentionally trying to deceive the public, we draw no inference that defendant's actions were designed to cause confusion.

█ Yet, the defendant's good intentions do not in any way preclude a finding of likely confusion. "[I]ntentional copying is not a requirement under the Lanham Act. Also, intent is largely irrelevent in determining if consumers likely will be confused as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986). While in this Circuit we do consider intention to be relevent when a plaintiff shows that a defendant knowingly copied the contested trademark, we agree completely with the Second Circuit that absent such a showing, intentions are irrelevent.

8. Likelihood of Expansion of the Product Lines

Finally, the District Court found that "Wynn's sales area will decrease rather than expand" and that Thomas "does not plan to expand Classic Car Wash outside Tennessee. Therefore, it is unlikely that either party's market will expand so as to increase the likelihood of confusion." Joint Appendix at 32. Because these findings are not clearly erroneous, we must accept them. Yet, the fact that Wynn and Thomas probably will not expand significantly beyond their present positions does not address the question whether Thomas' use of the term CLASSIC to market his car wash service is likely to cause confusion.

After examining these eight factors, we conclude that there is a clear likelihood of confusion between Wynn's car waxes and Thomas' bulk wax. The closely related nature of the products and the similarity of the marks make it highly probable that a purchaser of Thomas' bulk wax would assume that it has some affiliation with Wynn's car care products.

The question of whether Thomas' use of the mark CLASSIC on his car washes infringes on Wynn's mark is much closer. The key in this case is that Thomas and Wynn are essentially selling the same thing —a clean car. And because we believe that consumers would see Thomas and Wynn as providing this same product, we find that a reasonable consumer could conclude that Thomas' CLASSIC CAR WASHES are merely a new service provided by the company that sells CLASSIC car care products. This conclusion is supported by our holding that Thomas' sales of bulk car wax under the name CLASSIC was likely to be confused with Wynn's CLASSIC mark. If consumers associate Thomas' bulk wax with Wynn's mark, it follows that consumers who know that the bulk car wax was affiliated with Thomas' car wash would also associate the car washes with Wynn's products.

### CCWI v. Thomas

█ CCWI also claims that Thomas infringed on its rights to use the service mark CLASSIC CAR WASH. Wynn owns the right to this service mark, but has granted CCWI an exclusive license to use the mark for its car wash franchises. Before we examine the merits of CCWI's claim, we must first address Thomas' claim that CCWI does not have standing to sue for infringement because they have not proven that they have any interest in the service mark owned by Wynn. Thomas alleges that while CCWI claims to have an exclusive license to use the service mark, this license was never made part of the record, despite repeated requests by the District Court to see it and repeated prom-

ises by the plaintiffs to produce it.[3]

While appellants' failure to produce the license agreement is inexcusable and irresponsible, it does not change the fact that the record contains undisputed testimony from Mr. Mongiovi and Mr. Kidwell, that CCWI had an exclusive license to use Wynn's service mark. No evidence refutes this testimony and the Court made no finding that it did not believe it. This evidence establishes CCWI's standing to protect its rights in the service mark.

Moving to the merits of the case, unlike the trademark CLASSIC, the service mark CLASSIC CAR WASH was registered less than five years ago, on January 22, 1983, and is therefore not incontestable under 15 U.S.C. § 1065. This means that Thomas is free to challenge whether the term CLASSIC CAR WASH is strong enough to warrant service mark protection under the Lanham Act.

■ Thomas claims that CLASSIC CAR WASH is merely a descriptive term, and thus warrants little or no protection. The District Court agreed with this argument calling the term CLASSIC "an inherently weak mark." However, both Thomas and the District Court fail to take account of the decisions of the United States Patent and Trademark Office, which in both 1975, and 1983, determined that CLASSIC and CLASSIC CAR WASH were strong enough marks to deserve protection under the Lanham Act. The fact that these marks have been registered on the Principal Register of the United States Patent and Trademark Office constitutes "prima facie evidence" of the registrant's exclusive rights to use the mark on the goods or services specified in the registration. 15 U.S.C. § 1115(a). This means that the Patent and Trademark Office, on two separate occasions, considered these terms and found them to be sufficiently strong to be registered. Therefore, unless defendant can introduce evi-

dence to rebut the presumption of the marks' validity, we will accept the conclusion of the agency which is entrusted with the duty of administering the Lanham Act, and which is undoubtedly expert in these matters.

■■ In attempting to meet this burden, Thomas argues that the mark CLASSIC CAR WASH is merely descriptive. A merely descriptive mark can only be protected if the owner can show that the term had developed a "second meaning"—that the public identifies the trademark with a particular "source" rather than the product. J. McCarthy, § 11:5, *supra.* A mark is descriptive if it describes: the intended purpose, function or use of the goods; the size of the goods; the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user. *Id.*

It seems clear that the term CLASSIC in CCWI's mark is designed to make the consumer think of the classic cars of the past, and not that they will somehow receive a classic wash at CCWI. The design of the mark, which includes a picture of a classic automobile, also supports this interpretation. The mark cannot be said to describe the intended purpose, function, or use of the product, and is thus not "merely descriptive." Therefore, in light of the suggestive characteristics of the mark, and the United States Patent and Trademark Office's recognition of the mark, we hold that CLASSIC CAR WASH is a relatively strong mark, worthy of full protection.[4]

■ Aside from the legitimate question regarding the strength of the mark, even a cursory examination of some of the other factors makes it clear that Thomas' use of the mark CLASSIC CAR WASH will likely cause confusion with CCWI's service mark CLASSIC CAR WASH. Obviously, since both marks use absolutely identical lan-

**3.** Appellants did attempt to file a copy of a licensing agreement with this Court. We cannot consider such evidence which was never introduced at trial.

**4.** We reject Thomas' argument that because the word CLASSIC appears in the dictionary, it is a

common term unworthy of protection. The significant factor is not whether the word itself is common, but whether the way the word is used in a particular context is unique enough to warrant trademark protection.

guage to sell a nearly identical service,[5] the likelihood of confusion must be considered great. As Professor McCarthy wrote, "[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement." J. McCarthy 23:3, supra. If this were not enough to show likely confusion, the District Court also found, as a matter of fact, that CCWI's expansion prospects were good, which means that consumer confusion will most likely increase in the future.

### Defense of Prior Use

■■ Thomas argues that his good faith prior use provides an affirmative defense against a finding of infringement, under 15 U.S.C. § 1115(b)(5). This section of the Lanham Act allows a defendant to continue to use plaintiff's mark if,

> the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party ... from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved;

*Id.* [emphasis in original].

This section requires that in order for Thomas to successfully assert this defense, he must show that he innocently started using the mark before the plaintiffs had

registered it. The District Court found that Thomas first used the term CLASSIC CAR WASH in December, 1979—four years after Wynn had registered the mark CLASSIC. Therefore, Thomas cannot assert the defense against Wynn.[6] And since Thomas is already prohibited from using the CLASSIC mark because it infringes Wynn's rights, we need not decide the applicability of the defense to CCWI's suit.

■■■ Finally, Wynn and CCWI appeal the District Court's holding that Thomas did not violate the Tennessee Anti-Dilution Statute, Tenn.Code Ann. § 47–25–512. While we disagree with the District Court's reasoning, we AFFIRM the District Court's dismissal of this count because the record does not reveal that appellants proved they suffered any damages as a result of Thomas' use of their marks. Therefore the state claims were properly dismissed. Likewise, because appellants have failed to show that they suffered any monetary damages because of Thomas' infringement of their marks, we limit their remedy to injunctive relief.

The judgment is REVERSED on the federal trademark and service mark infringement claims, AFFIRMED as to the state claims, and REMANDED to the District Court with instructions to issue appropriate injunctive relief in accordance with this opinion.

---

5. The District Court acknowledges that the services provided by the parties are closely related and that the trade names are identical. Yet, it states that "[o]nly the most non-observant consumer could visit the plaintiff's whimsical facility and later mistake the defendant's ordinary operation for one of plaintiff's car washes." Joint Appendix at 36. We agree that a consumer would realize that CCWI offers a much more elaborate product. But this is precisely why CCWI should be protected. It would be patently unfair to allow Thomas to use the same name, provide a much more spartan service, and force potential consumers to guess which type of ser-

vice they are paying for each time they consider using a car wash named CLASSIC.

6. If Thomas were to prevail against Wynn, § 1115(b)(5) would provide him a partial defense against CCWI, because the mark CLASSIC CAR WASH was not registered until February 22, 1983. Between 1979 and 1983, Thomas innocently operated a car wash in Cookeville, Tennessee. Thomas' use of the mark would be thus protected as to this single car wash. But, this defense is inapplicable to defendant's car washes in Cleveland, Oak Ridge, and Knoxville, since they were purchased or built after February 22, 1983.