**GOUGEON BROTHERS, INC., Plaintiff,**

**v.**

**W. Kern HENDRICKS, Thomas Freeman, and System Three Resins, Defendants.**

**No. 88–CV–10070–BC.**

United States District Court,
E.D. Michigan, N.D.

June 15, 1988.

Michael J. Jordan, Craig W. Horn, Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, Mich., for plaintiff.

John A. Krsul, Jr., Kenneth J. McIntyre, Dickinson, Wright, Moon Van Dusen & Freeman, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The motion at issue in this case requires the Court to determine whether a preliminary injunction is appropriate under the Lanham Act, 15 U.S.C. §§ 1051–1127, to afford temporary protection to various trade and service marks claimed by Plaintiff Gougeon Brothers, Inc. Although the Court finds that the acronym "WEST" is a descriptive term entitled to no special protection, the Court finds that a preliminary injunction is necessary to protect the specific phrase "WEST System."

### I. Factual Background

Gougeon Brothers, Inc. ("Gougeon"), a Michigan corporation "engaged in the manufacture and distribution of epoxy compounds" used to repair and manufacture wooden and fiberglass boats, see Complaint, ¶ 3, sells products under the registered trademark of "WEST System." See Trade & Service Mark Reg. No. 1,248,-020. The acronym WEST refers to "Wood Epoxy Saturation Technique," which is a widely-used practice in the boatbuilding industry involving the cold-molding application of epoxy as both a sealant and an adhesive. See, e.g., J. Guzzwell, Modern Wooden Yacht Construction 125 (2d ed. 1981). While Guzzwell contends that the use of epoxy as a sealant was prevalent in the industry well before Gougeon espoused such construction, Guzzwell concedes that "Gougeon Brothers just happened to be the first to fully appreciate (and then publicize) how epoxies might best be used for cold-molding, and how cold-molded construction might be adapted to exploit epoxy's virtues." Id.

Defendants W. Kern Hendricks and Thomas Freeman, who are general partners in the Washington partnership of Defendant System Three Resins ("System Three"), also are engaged in the business of building boats using the wood epoxy saturation technique. In an effort to enhance its sales, System Three placed a series of advertisements in various trade publications extolling their products in a variety of terms. In the January/February issue of "Wooden Boat," for example, System Three offered buyers the opportunity to "build a lighter boat" using System Three's epoxy products. A subsequent ad in the April/May edition of "Small Boat Journal" invited "WEST System Epoxy Users" to obtain trial samples of System Three's products; the reference to "WEST System" was explicitly credited in the ad as a "Trademark of Gougeon Brothers, Inc., U.S.A." See Plaintiff's Reply Brief, Gougeon Affidavit Exhibit B. The June/July 1986 edition of "Small Boat Journal" described System Three's products as "a superior resin for the W.E.S.T. method of construction." This ad contained no reference to Gougeon, however. Similar ads containing references to the "WEST method" appeared in a variety of later publications without mention of Gougeon. In a comparison ad issued in the March, 1988 "Boatbuilder" magazine, though, System Three did recognize the existence of the Gougeon mark.

System Three's inclusion of the terms "WEST," "WEST method," and "WEST System" in nearly all of its ads prompted

Gougeon to file the case at bar in an effort to protect its marks. Along with the original complaint, Gougeon filed the motion for preliminary injunctive relief that is before the Court. In both its motion papers and at oral argument, plaintiff vacillated between requesting narrow relief and demanding sweeping protection. Because plaintiff's request for injunctive protection at times has been as broad as all variants of the term "WEST," the Court must address the possibility of an injunction to protect a whole series of marks.

## II. The Propriety of Injunctive Protection for "WEST" Terminology

In determining whether a preliminary injunction is appropriate, the Court must evaluate four considerations that the Sixth Circuit has consistently enumerated as relevant sources of inquiry:

1. whether Gougeon has shown a strong or substantial likelihood of success on the merits;

2. whether Gougeon has demonstrated irreparable injury;

3. whether the preliminary injunction could harm third parties; and

4. whether the public interest would be served by issuance of the preliminary injunction.

*See, e.g., Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 (6th Cir.1987) (citing *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985)). Although none of these factors is independently controlling, the Sixth Circuit has made clear that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982). Bearing these basic directives in mind, the Court must

consider whether a preliminary injunction is warranted in this case.

### A. Likelihood of Success on the Merits

The "likelihood of success" inquiry mandates evaluation of the substantive Lanham Act claim raised by Plaintiff Gougeon.[1] As a threshold matter, the Court notes that Lanham Act claims involve two steps of analysis. First, the Court must classify the marks at issue. *See, e.g., Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir.1988) (discussing nature of mark); *see also 815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 647 (2d Cir.1988) (describing various types of marks in detail). If, after classifying the marks at issue, the Court determines that the mark or marks merit protection, the Court then must evaluate the "likelihood of confusion" as between the allegedly infringed mark or marks and the allegedly infringing mark or marks. *See, e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir.1982) ("[T]he standard of proof needed to prevail in a [15 U.S.C. § 1125(a)] action for injunctive relief [is] a showing of 'likelihood of confusion.' "). Because Plaintiff Gougeon's claim for "palming off" is premised on 15 U.S.C. § 1125(a), *cf. Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir.1987) (" '[P]alming off' ... occurs between directly competing goods and the confusion is over their source of origin."), the Court must undertake the two-step analysis applicable to such Lanham Act claims.

### 1. Classification of the "WEST" Terminology

■ For Lanham Act purposes, marks fall into one of five categories: (1) generic;

---

1. Plaintiff Gougeon's motion for preliminary injunctive relief is premised solely on its Lanham Act claim. *See* Plaintiff's Reply Brief at 1. Plaintiff's additional claims are all pendent state claims for unfair competion, breach of contract, and violation of the Michigan Consumer Protection Act. While these claims are not relevant to the motion at issue, the Court notes in passing that Gougeon apparently lacks standing to as-

sert a claim under the Michigan Consumer Protection Act. *See Noggles v. Battle Creek Wrecking, Inc.*, 153 Mich.App. 363, 367, 395 N.W.2d 322 (1986) ("[A] clear legislative intent in enacting the Michigan Consumers Protection Act was to protect *consumers* in their purchases of *goods which are primarily used for personal, family or household purposes*.") (emphasis added).

(2) descriptive; (3) suggestive; (4) fanciful; or (5) arbitrary. *815 Tonawanda Street,* 842 F.2d at 647. "Trademarks and trade names are accorded varying degrees of protection, depending upon which of the above categories they fall under." *Id.* After considering the various categories, the Court determines that the variations of the WEST acronym all constitute descriptive marks. *See Wynn Oil,* 839 F.2d at 1190 ("A mark is descriptive if it describes: the intended purpose, function or use of the goods; . . . a desirable characteristic of the goods; or the end effect upon the user."); *see also 815 Tonawanda Street,* 842 F.2d at 647 (same). The acronym WEST, or wood epoxy saturation technique, merely describes a function, use or characteristic of the materials sold by the parties.

Because the WEST terms at issue all amount to descriptive marks, they are only entitled to Lanham Act protection if Gougeon "can show that the term[s] had developed a 'second meaning'—that the public identifies the trademark[s] with a particular 'source' rather than the product." *Wynn Oil,* 839 F.2d at 1190 (citing J. McCarthy, Trade-marks and Unfair Competition § 11.5 (2d ed. 1984)). Under these analytical strictures, plaintiff cannot possibly assert a claim for broad relief enjoining System Three from using the general term of "WEST." The acronym for the wood epoxy saturation technique is no more than a descriptive term devoid of any secondary meaning. Although Plaintiff Gougeon bears "the burden of proving secondary meaning in this case," *815 Tonawanda Street,* 842 F.2d at 647, Defendant System Three has introduced copious evidence indicating that the "WEST" acronym is widely used in the boatbuilding business. Thus, the Court finds that Gougeon is unlikely to prevail on its broad claim that all variations of WEST terminology deserve trademark protection.

█ The question of whether the specific term "WEST System" merits preliminary protection as a descriptive mark with secondary meaning is a much closer question. As Judge Kennedy reasoned in *Wynn Oil,* "[t]he fact that [WEST System] ha[s] been registered on the Principal Register of the United States Patent and Trademark Office constitutes 'prima facie evidence' of [Gougeon's] exclusive rights to use the mark on the goods or services specified in the registration." *Wynn Oil,* 839 F.2d at 1190 (citing 15 U.S.C. § 1115(a)). While Plaintiff Gougeon could not assert this argument based on registration with respect to the entire range of WEST terminology, Gougeon clearly received registration of the specific mark "WEST System" from the Patent and Trademark Office. *See* Trade & Service Mark Reg. No. 1,248,020. Accordingly, Gougeon's registration of "WEST System" supplies prima facie evidence in support of Gougeon's asserted right to exclusive use of the mark. Moreover, defendants have offered only slight evidence to support the contention that the specific term "WEST System," as opposed to "WEST Method," "WEST Technique" or any other variation, is widely used throughout the industry in a manner that evidences a lack of specific association of the "WEST System" mark with Gougeon. Based on the evidence before the Court, then, the Court finds as a preliminary determination that Plaintiff Gougeon is quite likely to establish that the specific "WEST System" mark is a descriptive term with a secondary meaning thus warranting Lanham Act protection. *Cf. Wynn Oil,* 839 F.2d at 1190; *815 Tonawanda Street,* 842 F.2d at 647–48. Because plaintiff has demonstrated a substantial likelihood of success on the issue of "WEST System" bearing a secondary meaning, the Court must consider the likelihood of confusion between Gougeon's epoxy products and those sold by System Three.

### 2. Likelihood of Confusion

█ In determining likelihood of confusion, the Sixth Circuit has relied upon eight relevant factors:

1. strength of Gougeon's "WEST System" mark;

2. relatedness of Gougeon's and System Three's goods;

3. similarity of the Gougeon and System Three marks;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. System Three's intent in selecting the mark; and

8. likelihood of expansion of the product lines.

*Elby's Big Boy*, 670 F.2d at 648; *Wynn Oil*, 839 F.2d at 1186. The *Wynn Oil* court clearly indicated that the eight factors "are simply a guide to help determine" likelihood of confusion; Plaintiff Gougeon "need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil*, 839 F.2d at 1186. Further, "a mere showing that [System Three's] advertisements tend to create a false impression is sufficient to warrant *injunctive* relief." *Elby's Big Boy*, 670 F.2d at 647 (emphasis added). Against this analytical backdrop, the Court must weigh the eight relevant factors to determine whether Plaintiff Gougeon has demonstrated a "strong probability" of success in establishing a "likelihood of confusion."

### (i) Strength of Gougeon's "WEST System" mark

Gougeon received registration of the "WEST System" mark on August 16, 1983. Because five years had not yet elapsed from the point of registration on the date that the case at bar was filed, Gougeon's mark is not "incontestable." *See* 15 U.S.C. § 1065; *see also Wynn Oil*, 839 F.2d at 1186–87. Accordingly, the Court need not assume that Gougeon's "WEST System" mark is strong. *See Wynn Oil*, 839 F.2d at 1187. Conversely, the fact that Gougeon was granted registration by the Patent and Trademark Office provides evidence to support the strength of the "WEST System" mark. *See Wynn Oil*, 839 F.2d at 1190. On balance, then, the registration process offers no clear answer as to the strength of the "WEST System" mark. Because neither party has offered any persuasive, cogent argument concerning the strength of the *specific* "WEST System" mark, the Court finds that Gougeon's mark is neither significantly strong nor exceptionally weak.

### (ii) Relatedness of Gougeon's and System Three's products

This factor clearly favors Gougeon. As far as the Court can discern, the two companies produce goods that are similar in purpose. In fact, the defendants' opening sentence in their responsive brief states that "Plaintiff and Defendants market 'wood epoxy saturation technique' boat-building products." This statement is tantamount to an admission that the two companies market virtually identical goods. The Court, therefore, can safely assume that the second factor supports Gougeon's "likelihood of confusion" claim.

### (iii) Similarity of the Gougeon and System Three marks

Without question, this factor supports Gougeon's "likelihood of confusion" argument. System Three has used the specific term "WEST System" in several of its ads, although it has acknowledged Gougeon's registration on occasion. At this juncture, however, the Court must emphasize that injunctive relief with respect to the registered "WEST System" mark will not preclude System Three's use of the descriptive "WEST" term. As far as the "WEST System" mark is concerned, the similarity between System Three's advertisements and Gougeon's mark suggests the probability of consumer confusion. This similarity is particularly important in view of the Sixth Circuit's comment that "a mere showing that advertisements tend to create a false impression is sufficient to warrant *injunctive* relief." *Elby's Big Boy*, 670 F.2d at 647 (emphasis added).

### (iv) Evidence of actual consumer confusion

In support of its assertion of "likelihood of confusion," Gougeon has submitted two letters demonstrating that consumers have mistaken Gougeon's epoxy products for those sold by System Three. *See* Reply Brief, Affidavit of Meade Gougeon, Exhibit C. Based on plaintiff's proof of actual confusion, the Court would encounter sub-

stantial difficulty justifying its position if it chose to deny plaintiff's motion for preliminary injunctive relief. As Judge Kennedy's *Wynn Oil* opinion unequivocally indicates, "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil*, 839 F.2d at 1188. In the case at bar, Gougeon has provided the Court with clear evidence of actual consumer confusion. Thus, the Court recognizes that Plaintiff Gougeon's claim is significantly buttressed in light of controlling Sixth Circuit precedent.

### (v) Marketing channels used

Both Gougeon and System Three sell their products through mail-order advertisements placed in national trade magazines. From this ostensibly undisputed fact, the Court concludes that the similarity of marketing channels factor supports Gougeon's motion for preliminary protection.

### (vi) Likely degree of purchaser care

The epoxy products sold by Gougeon and System Three are relatively inexpensive; a comparative ad run by System Three indicates that two of the companies' widely-sold products fall within the $25 to $50 per gallon price range. *See* Plaintiff Reply, Gougeon Affidavit, Exhibit B. The comparatively low prices of the products suggest minimal purchaser care.

Conversely, the facts that the products are used to construct and maintain expensive boats and are available only through mail-order purchases indicate that consumer purchasing awareness may be substantial. Balancing the conflicting indicators of the degree of consumer purchasing care, the Court cannot conclusively determine that the purchaser care factor counsels either for or against issuance of a preliminary injunction based on likelihood of confusion.

### (vii) System Three's intent in selecting the mark

The series of ads run by System Three that culminates in a major comparative piece indicates that System Three recognizes that it stands to gain market share at Gougeon's expense by attacking Gougeon. At oral argument, counsel for both parties concurred in the view that Gougeon is the market leader and System Three is a new market entrant with plans to challenge Gougeon. In this respect, System Three has a vested interest both in confusing its products with those of Gougeon and in stripping "WEST System" of any secondary meaning that the term might possess. While the Court cannot detect any discrete evidence imputing intentional wrongdoing to System Three, the Court can readily infer that System Three seeks to closely associate itself with Gougeon so long as Gougeon is the market leader and System Three is a challenger; System Three's sequence of advertisements provides ample support for this inference. *Cf. Wynn Oil*, 839 F.2d at 1189 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986)). Based on evaluation of the nature and content of System Three's advertisements, the Court preliminarily infers that System Three intended to derive some benefit from Gougeon's "WEST System" mark and company reputation by utilizing the terms "WEST" and "System" in single clauses of its ads.

### (viii) Likelihood of product line expansion

In the case at bar, the Court has received no evidence to suggest that Gougeon or System Three intends to extend its product line or expand its sales efforts into new markets. Both companies currently undertake nationwide sales efforts and apparently offer full lines of epoxy materials for boatbuilding use. Thus, the final factor for evaluating likelihood of confusion favors System Three in that no danger of increased potential for confusion exists.

### 3. Summary of the Court's Preliminary Merits Analysis

In the Court's view, Plaintiff Gougeon has demonstrated the requisite "substantial likelihood of success on the merits" to warrant injunctive protection for the "WEST System" mark, although Gougeon is nearly certain to fail in its attempt to secure sweeping protection for all "WEST"

terminology. From the evidence presently available, the Court reaches the *preliminary* conclusion that "WEST System" is a descriptive mark with a secondary meaning. The Court further finds as a *preliminary* matter that five of the eight relevant factors indicate a strong "likelihood of confusion," while only one factor clearly suggests a contrary conclusion. In sum, Plaintiff Gougeon has satisfactorily established a "substantial likelihood of success on the merits." *Cf. Wynn Oil*, 839 F.2d at 1186 ("[A] plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful.").

### B. Irreparable Harm

■ Because a showing of imminent irreparable harm is an essential prerequisite to the issuance of a preliminary injunction, *see, e.g., Friendship Materials*, 679 F.2d at 105, the Court must carefully evaluate the potential impact on Gougeon if no injunctive relief is granted. The Court's analysis on this point must be guided by the Sixth Circuit's decision in *National Bd. of Young Men's Christian Ass'ns v. Flint Young Men's Christian Ass'n of Flint, Michigan*, 764 F.2d 199 (6th Cir.1985) (hereinafter *"Flint YMCA"*).

In *Flint YMCA*, the Sixth Circuit provided the following test for irreparable harm in the context of the Lanham Act:

> [A] preliminary injunction should not issue unless "there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows."

*Id.* at 201 (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971) (Friendly, C.J.)). Dissenting in *Flint YMCA*, Judge Kennedy offered the caveat that "[i]rreparable harm exists, as a matter of law, when one party appropriates the precise mark which is registered to another." *Flint YMCA*, 764

F.2d at 202 (Kennedy, J., dissenting). Considering Judge Friendly's test for irreparable harm in light of Judge Kennedy's concern, the Court finds that Plaintiff Gougeon has made an adequate showing of irreparable harm in the case at bar.

The evidence of record clearly indicates that Defendant System Three has used variants of "WEST" terminology that include the terms "WEST" and "System" in a single clause. This type of advertising, if permitted while the case at bar is pending, will tend to divest Plaintiff Gougeon's registered mark of whatever secondary meaning it may currently possess. The Court recognizes that the Sixth Circuit has not adopted a *per se* rule for finding irreparable harm when a registered mark is used by a plaintiff's competitor. *See Flint YMCA*, 764 F.2d at 201. The secondary meaning of a registered mark such as "WEST System," however, should not be eviscerated while a Lanham Act claim to protect the secondary meaning is at issue. Gougeon's "WEST System" mark must be afforded preliminary protection to prevent System Three from using the term "WEST System" prior to trial and then arguing at trial that widespread use of the term has rendered "WEST System" devoid of any secondary meaning. The potential for irreparable harm in such a case is self-evident. Accordingly, the Court finds that Plaintiff Gougeon has satisfied the *Flint YMCA* test for irreparable harm.[2]

### C. Potential Harm of Injunction to Third Parties

By granting narrowly-tailored relief in the form of protection for the term "WEST System" only, the Court has endeavored to allow competitors in the boatbuilding business to freely use variants of descriptive "WEST" terminology. The Court recognizes that the use of "WEST" as a descriptive acronym is pervasive in the industry, and therefore should not be needlessly cur-

---

**2.** In evaluating the irreparable harm consideration, the Sixth Circuit has indicated that proof of "'substantial financial interest'" can satisfy the irreparable harm requirement. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir.1982). Although the Court surmises that Gougeon has a

"substantial financial interest" in its exclusive use of the "WEST System" mark, Gougeon made no record on this score. Thus, the Court cannot weigh this factor in considering whether irreparable harm may occur in the absence of a preliminary injunction.

tailed. As far as the Court is concerned, then, neither boatbuilding competitors nor consumers will be unduly limited or misled by the Court's preliminary restriction on System Three's power to use the term "WEST System."

### D. Public Interest Concerns Underlying Injunctive Relief

■ Based on Plaintiff Gougeon's proof of actual consumer confusion, the Court finds that the public interest will be served by issuance of limited preliminary injunctive relief. Trademark infringement, by its very nature, adversely affects the public interest in the "free flow" of truthful commercial information. *Cf. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–72, 96 S.Ct. 1817, 1830–31, 48 L.Ed.2d 346 (1976). The actual consumer confusion resulting from System Three's advertisements supports the Court's preliminary conclusion that public interest considerations mandate carefully circumscribed injunctive relief. Consumers quite apparently have been misled by System Three's use of the terms "WEST" and "System" in combination. Thus, the Court must issue a preliminary injunction to alleviate such an impediment to the free flow of information to consumers through advertising. Because all of the relevant factors underlying the Court's inquiry indicate that limited injunctive relief is appropriate, the Court will issue an injunction prohibiting System Three from using the terms "WEST" and "System" in a single advertisement. Obviously, though, the Court will place no restrictions on System Three's use of the descriptive acronym "WEST" in isolation.

### III. Conclusion

Finding merit to a limited extent in Plaintiff Gougeon's motion for preliminary injunctive relief, the Court will enter an order granting in part plaintiff's motion. Although the Court will issue a preliminary injunction pursuant to 15 U.S.C. § 1116(a), the Court will *not* require Defendant System Three to submit a sworn statement of its efforts to comply with the Court's order. *See id.*